**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 16, 2018[*]
Decided January 17, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1602

| | |
|---|---|
| MOHAMED SALIM GAFFOORDEEN,<br>    *Petitioner,*<br><br>    *v.*<br><br>JEFFERSON B. SESSIONS III,<br>Attorney General of the United States,<br>    *Respondent.* | Petition for Review of an Order of the<br>Board of Immigration Appeals.<br><br><br>No. A088 574 274 |

## O R D E R

Mohamed Gaffoordeen, a Sri Lankan citizen, applied for asylum, withholding of removal, and protection under the Convention Against Torture. An Immigration Judge denied his applications, and the Board of Immigration Appeals upheld the IJ's decision. Gaffoordeen moved to reopen proceedings based on additional evidence, but the Board denied the motion. It concluded that he did not meet the criteria of 8 CFR § 1003.2(c)(1)

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

for reopening. This rule requires that his new evidence be material and that it could not have been presented at the time of his hearing before the IJ. Gaffoordeen petitions for review of this decision. Because the Board did not abuse its discretion in its ruling, we deny the petition.

Gaffoordeen entered the United States in 2009 on a three-month visa but did not leave when his visa expired. One year after his arrival, he applied for asylum, withholding of removal, and CAT relief. After learning of his unauthorized presence here, the Department of Homeland Security initiated removal proceedings, and Gaffoordeen conceded his removability under 8 U.S.C. § 1227(a)(1)(B) at a hearing in 2010. The IJ designated Sri Lanka as the country of removal and adjourned proceedings for roughly four years. (The parties do not explain the delay.)

When proceedings resumed in 2014, Gaffoordeen testified in support of his applications about his fear of returning to Sri Lanka. He said that if removed there, he would be "murdered" by a group of political opponents affiliated with the Sri Lankan government called the "Karuna Group." Gaffoordeen, a supporter of the Muslim Congress Party, asserted that in early 2009, members of the Karuna Group threatened to shoot him if he ran for office. They later abducted him while he was en route to his party's office; they then drove him to a camp and beat him for 19 days. The group released him, he said, on receipt of a $100,000 ransom payment and promises that he would neither run for political office, nor stay in Sri Lanka. He added that after he was released, members of the group abducted his brother and father and that his father died in the group's camp.

Gaffoordeen attempted to corroborate this testimony with documents. He provided a statement that he had written in 2010 about the Karuna Group's treatment of him. He also furnished a letter from a Muslim Congress Party official thanking him for his support; a letter from his mother recounting his abduction and stating that he "would be endangered" by political supporters of the Sri Lankan government if he returned to Sri Lanka; and a copy of a report that his father had filed with the local police after Gaffoordeen's disappearance. In the report his father says that unnamed "illegal armed groups had threatened [his son] not to involve [himself] in political activities," and he suspected that "these groups" abducted his son because he refused their demands. Gaffoordeen said that he could not obtain other documents from Sri Lanka. Although his mother had returned to Sri Lanka on a trip in 2014, she was

"scared" to get them, and at some point, the Karuna Group had set fire to his textile business, where he thought more documents were stored.

The IJ denied Gaffoordeen relief. The IJ ruled that Gaffoordeen's testimony was not credible because of inconsistencies within it and omissions about "his time in the custody of the Karuna Group." The IJ noted that in his written statement from 2010, Gaffoordeen said that when he was in the Karuna Group's camp, he had a high fever and was deprived of food and water for days, but he omitted these details in his testimony. In addition the IJ found it "implausible" that Gaffoordeen was continuously beaten for 19 days but sustained only bleeding from his nose and ears, a "cracked" lip, and a two-inch cut on one of his legs, as he testified at the hearing. The IJ further concluded that he inconsistently testified about the timing of his nomination to run for office. And, the IJ ruled, Gaffoordeen's documents did not overcome the finding that his testimony was not credible.

Gaffoordeen's appeal to the Board of Immigration Appeals was unsuccessful. The Board ruled that the IJ did not err in her adverse credibility finding. The Board also agreed with the IJ that, besides his mother's letter and his father's police report, "the other corroborating evidence . . . only touched on general aspects of his narrative . . . and did little to confirm the political candidacy that allegedly motivated his kidnapping or [his] . . . account of the abuse he suffered at the hands of his captors."

Gaffoordeen did not petition for review of this decision; instead about three months later, he moved to reopen proceedings. He submitted five documents that, he argued, corroborated his story and became available only after his mother returned again to Sri Lanka in 2016. These documents are: (1) another letter from his mother, asserting that the Karuna Group was "looking for him" and that "his life will be in danger" if he returns to Sri Lanka; (2) another letter from the same Muslim Congress Party official who wrote the prior letter, stating that Gaffoordeen "had suffered at the hands of the Karuna Group because he had campaigned for our group and had tried to run for election"; (3) a letter from a former neighbor in Sri Lanka who said that the Karuna Group was searching for Gaffoordeen; (4) a death certificate for Gaffoordeen's father, attributing death to "tortur[e]" in 2011; and (5) a document certifying Gaffoordeen's ownership of his textile business. The Board denied the motion. It concluded that Gaffoordeen had not met the criteria of 8 C.F.R. § 1003.2(c)(1) for the immigration service to consider new evidence. The Board emphasized that he did not

"sufficiently explain[] why the business registration and death certificate were not previously proffered during his hearing."

In this court Gaffoordeen argues that the Board erred by denying his motion to reopen because, he maintains, his five additional submissions were not previously available. He explains that he thought that his father's death certificate and his business registration were "lost and irretrievable" because the Karuna Group had burned down his business. He adds that these two documents became available only when his mother went back to Sri Lanka in 2016.

The Board did not abuse its discretion in denying Gaffoordeen's motion to reopen his case. "[A] movant bears a heavy burden to reopen matters due to the discovery of previously unavailable evidence." *Krougliak v. I.N.S.*, 289 F.3d 457, 460 (7th Cir. 2002). Under 8 CFR § 1003.2(c)(1), "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."

We begin with the first three documents, all of which described the Karuna Group's pursuit of Gaffoordeen. The new letter from his mother essentially amplified her earlier letter and was therefore not materially new information. The message from the Muslim Congress Party official could have been expressed in the official's prior letter that Gaffoordeen had submitted to the IJ. And Gaffoordeen could have obtained the letter from his neighbor during the four-year hiatus between when Gaffoordeen filed his asylum application and his hearing.

That brings us to the last two documents, which certify Gaffoordeen's business ownership and his father's death in 2011. It is true that he did not obtain these documents until 2016 and that his mother was unwilling to get them earlier. But he has not explained why he could not have asked his other Sri Lankan contacts to get these documents before his hearing in 2014. Based on his evident, ongoing relationship with the official from the Muslim Congress Party, it is reasonable to infer that he had contacts, besides his mother, whom he could have asked to retrieve these documents earlier. The Board therefore reasonably decided that this evidence could have been presented at his hearing before the IJ. *See Krougliak*, 289 F.3d at 460 (rejecting petitioner's new evidence because it appeared that "other individuals" could have obtained it prior to petitioner's hearing before IJ).

Because the Board did not err by determining that Gaffoordeen did not meet the criteria of 8 C.F.R. § 1003.2(c)(1) for reopening, the petition is DENIED.